The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Thank you. We'll first call 4-23-0145, the State of Bader. Robert Schumacher, Kathy Bader, Executor. Counsel for the appellee, will you please state your name for the record? Chris Strinquan. Or for appellant, I'm sorry, I should ask the appellant first, my mistake. Chris Seracino, Your Honor. Thank you, and we have Mr. Strinquan. Counsel you may proceed. May it please the court, in this matter my client's right to a jury trial was taken from him improperly. The issue on appeal is whether the trial court erred in granting a motion to dismiss under 2-619 in light of genuine disputed facts for the jury to decide. The Court of Appeals review is de novo. On July 19, 2019, Mr. Berne Bader and his personal pickup truck ran over Mr. Schumacher in a bean field. Mr. Schumacher, pinned under Mr. Bader's personal pickup truck, suffered serious life-altering injuries. At the time of the injuries, Mr. Schumacher worked for Helena Agriculture and was attempting to dislodge a stuck field sprayer. Mr. Schumacher filed a complaint and demanded a jury trial against Mr. Bader. Mr. Bader subsequently passed away, unrelated to this litigation, and his estate was known as a substitute in his place. Defendant Bader's estate argues that Berne Bader is immune from disability under the Work Complex Exclusivity Remedy provision. In order to enjoy immunity, Mr. Bader must have been both a co-employee and, in the course and scope of his employment with Helena Agriculture, plaintiff's employer at the time he ran over Mr. Schumacher. He was neither. Mr. Bader's estate's 2-619 motion was accompanied by a sole affidavit of Mr. Berne Bader prior to his passing. That affidavit is seriously contested through Helena Agriculture's internal documents, which give rise to genuine issues and material facts about whether Berne Bader, on the date of the incident, was an employee of Helena Agriculture, and if so, whether Berne Bader was acting in the course and scope of his employment with Helena Agriculture. The documents provided to the trial court undermine the vague affirmance of Mr. Bader's Elements of the resources placed Berne Bader on total and complete medical disability in February of 2019 due to health conditions that placed him as a safety risk to himself and others if he continued working. Mr. Bader's physician found that there were no accommodations that would allow Mr. Bader to perform the essential functions of his job. Mr. Bader's timesheets show that he missed 23 out of 23 days in the month of July of 2019. Mr. Bader's company pickup truck that he had from the start of his employment until February was taken away from him prior to this incident due to what his doctor's limitations were. Mr. Bader was informed that he could not be at the office for a true visit. Mr. Bader was present at Helena's office the day of the incident only because he was checking on the spraying progress of his personal fields and those he acted as a landlord for. He was acting as a customer of Helena that day. At Berne, Mr. Bader was told not to go to the scene of the incident and the first instance by Mr. Jason Smith, the branch manager, after hearing the call for the stuff sprayer while standing in Helena's office. These facts were presented to the trial court through internal documents obtained from Helena Agricultural. Bader's estate's motion rests solely on Mr. Bader's affidavit and the deposition of Mr. Bader's wife, Mr. Shoemaker, the plaintiff. Neither of which could speak intelligently on the topic of Mr. Bader's employment or the evidence he was to perform. The evidence in front of the trial court at the time of the trial court's ruling, from the plaintiff's point of view, skewed heavily in favor of finding that Mr. Bader was not an employee of Helena at the time of the incident and, at a minimum, raised a genuine issue of material fact whether Mr. Bader was an employee. Further, if under consideration by the trial court, the evidence seriously calls into question what the course and scope of Mr. Bader's employment with Helena would have been at that time. Helena instructed Mr. Bader to not be at work, to go home. They took his company car, told him that he could not come into the office other than for a true visit. Mr. Bader struck Mr. Shoemaker with a motor vehicle. How could it then be said that it would have been in the course and scope of his employment if they took his vehicle away? It is a long-standing rule in Illinois that summary judgment is inappropriate when the scope of employment is at issue, as the Payne v. Pittman case. The present section 2619 motion is similar to a motion for summary judgment that rule applies here. That's transferred to the Diedrich Insurance Agency LLC v. Smith case. Section 2619 sets forth in Section C that if a genuine issue of material fact exists, the trial court shall so deny. The Illinois Courts of Appeal made clear in Contos v. Bordos that a trial court should not grant Section 2619 motion to dismiss if material facts are contributed or if the court must weigh the evidence. There is no question that it is highly disputed whether or not Mr. Bader was an employee and whether or not he was acting in the course of his employment with Helena at the time of this incident. Further, it is beyond question the trial court was supposed to weigh the evidence presented to it at the hearing at the time of its ruling. Plaintiff's appeal rests on the logic that Mr. Shoemaker can bring an action against Mr. Bader as a third party. Section 5 of the Business Compact was enacted in order to allow plaintiffs to bring third party actions against non-FO employees. This was expressly confirmed by U.S. Bank v. Lindsay. Further it was brought to light in Carrillo v. Hamlin. In that case, an Aurora police officer was injured when she was shot by a fellow off-duty officer while responding to a domestic dispute at the off-duty officer's home. The dispute was between the off-duty officer and his wife. The off-duty officer attempted to argue he was immune to the incident. This is counsel. I didn't, we're getting, I'm personally getting most of everything you're saying. There's just a little bit of a connectivity problem. I just wanted to interject, interrupt to see if there's anything you could do on your end to correct it. I don't know if there is, but like I say, we're getting most of it. I recognize the cases that you've stated, but a couple of times I didn't get the full names of the cases. Really, I've been able to get everything else. Okay. Sure. Thank you for bringing that to my attention, Your Honor. Payne v. Whitmer, Diedrich Insurance Agency LLC, Contos, K-O-N-T-O-S v. Bordos, U.S. Bank v. Lindsey, Carrillo v. Hamlin are all the cases that I've mentioned so far. In the Carrillo v. Hamlin case, the Court of Appeals reversed the trial court's order of dismissal under 2619, dismissing the case on the exclusivity charge as is here, expressly held that the defendant's mere status as plaintiff's coworker does not make immune defendant from liability for plaintiff's injury, which resulted from the defendant's tort. Bader's estate attempts to argue Mr. Bader's status should be considered as a co-employee in the course and scope of his employment with Helena. This argument is against the- Counselor, if I can just interrupt you for a moment and address just a couple of issues. So in 2619, we would accept all well-pleaded facts and their inferences as true and construe all of those pleadings in supporting documents against the non-moving party, correct? That is correct, yes. Okay. And so I guess I'll start with this because there seems to be a lot of discussion, but as a general rule, are you suggesting that once a party goes on disability, they're no longer an employee of the entity? I would say that it's absolutely a question of fact, Judge, and the evidence presented to the trial court in this circumstance through Helena's internal documents seriously contradict the averments that were made by Mr. Bader in his affidavit that was attached to their motion. So I don't know that it's a matter of law that disability equates to no longer an employee. The defense cites that NOAC versus City of Country Club Hills, but that was decided under a different set of laws and restricted only to the Public Employees Disability Fund, I believe, is what the acronym stands for. So I would say no, not as a matter of law that it's in favor of plaintiff, but it is a matter of whether the individual is an employee and whether or not his actions are within the course and scope of his employment. And going to the issue of the scope of employment, as I understand it from the record, it was another employee that put the ropes and the chains in the back of the truck to assist in getting the sprayer unstuck, and it was plaintiff himself who returned the broken tools to the back of Bader's truck, is that correct? The facts bear out a little bit more detail, but that was picked up from the affidavit of Mr. Bader, which was unable to be cross-examined at all because of his passing, unfortunately. But the Helena documents clearly make it evident that Mr. Bader was told not to be there by the manager and that there's no other evidence that would support him being told to go out there or him having another employee place the items in his truck. The incident itself was that Mr. Shoemaker was on scene at the time of the incident, and that's how the incident occurs, because he just placed the stuff in the back of his truck. Whether he was instructed to do so, there's no evidence to that effect. Whether or not Mr. Bader should have been there, there's absolutely no evidence to that effect. So I would say who put the toe straps and stuff in his truck, we don't know. That's a question of fact for the jury, and how the items were placed in the back of his truck, Mr. Shoemaker attested to. Is there anything in the record that would suggest that the company had changed the scope of Mr. Bader's employment once he was placed on disability? I know you alluded to the fact suggesting that he shouldn't have the vehicle, but there also appeared to be at least some discussion about whether he could have the phone and still make some calls. Is there anything further in the record that you would like to highlight for me to talk about any change in the scope of employment? Well, certainly, Your Honor, I think it's evident through the medical records that are in the file, in the record that were in Mr. Bader's file. Does the court prefer the CI record citation? Whichever you prefer, that's fine. CI-37, CI-154, CI-34, 35, 38, and 41 all go to the internal conversations of Helena saying, hey, we can't have this guy working, he can't be driving, he can barely walk, he's going to pose a safety risk, and yes, they limit his ability to do things at all. The only thing that it could be potentially argued is that they say that he's important in the community and well-respected in the community, and so they like to keep that sort of ties together, but he's not supposed to. After that discussion, is there anything specific where that's really narrowed down into what then they have discussions back and forth where it's conclusive what the scope of that employment was? I would say 34 and 35 are the email chains that would really be of interest on that topic. Thank you. But again, they certainly go out of their way to expressly say that this gentleman is no longer working for us, he cannot perform functions of his job duties, his doctor puts it in CI-150-4, the doctor writes specifically that there's no accommodations that could be made so that Mr. Bader could perform his essential functions of his job. So with regards to that and all of Helena's references to the doctor's notes, there's no way that it can be construed that Helena anticipated this gentleman being out in the He was previously made phone calls and did sales for the company, he was never anticipated to be in a field removing a stuck sprayer system in any fashion in that regard, even when he was on full duty. So when he's on disability and can't operate a vehicle, can't walk, when he runs over another individual in a field, it can't be construed that he's within the course and scope of his employment. And at the very minimum, it raises a genuine issue of material fact. I'd like to just quickly touch on the second point of our appeal, which is that the emails that I just referred to, Your Honors, is encompassing of individuals that work for Helena. Those individuals were subpoenaed and Helena, the third party, no longer party of the case, moved to quash those subpoenas and the trial court did not allow the plaintiff to depose those individuals to get clear answers from the human resources director, from the branch And in light of that, we think that it was improper to dismiss the case before that was done as well. And that touches on a second point of our appeal. What's not at issue here is the plaintiff's agreement that the Illinois Work Comp Exclusivity Act is real and it's applicable, but you have to be a co-employee and you have to be in compliance with the course and scope of your employment if you're going to seek that immunity under the Work Comp Act. And so that is not a dispute. I think that's where the defendants are leaning in their arguments, is that just by virtue of Mr. Bader being an employee of Helena, even if he is deemed an employee, the immunity applies. And that was specifically overruled in Carrillo and U.S. Bank v. Lindsay. You have to be in the course and scope of your employment. So with regards to that, the plaintiff does not dispute that. The U.S. Bank v. Lindsay case is also interesting in that it regards to a jury trial in which a directed verdict was not granted after the evidence was presented and after the court could have decided at that point that Lindsay, the driver of the vehicle that killed the decedent in that case, was a co-employee acting in the course and scope of his employment for the same employer. But Mr. Shoemaker in this situation is not even able to get to that level because this case was dismissed outright as a motion dismissed under 2619, which as a recap, C states that the court shall so deny if the action is one in which the party is entitled to a trial by jury and a jury demand has been filed. There's been no contesting that the jury demand was made. A jury is proper for this case. And there are genuine issues of material fact, whether this Mr. Bader was in fact an employee and in the course and scope of his employment. So I'll leave it at that and wait for my rebuttal. Thank you, Your Honor. Thank you, counsel. You are out of time. Mr. Drinkwine, on behalf of the appellee. May it please the court and good afternoon, counsel. Plaintiff has raised two contentions on appeal. First, that genuine issues of material fact prevent the finding that Mr. Bader was plaintiff's co-employee acting in the course of his employment. And second, that the circuit court erred in granting the state's motion to dismiss before allowing him to take additional depositions. We just heard counsel say that he wanted to touch on his second appellate contention and did so briefly. Problematically, plaintiff did not touch on his second appellate contention in his reply brief. In its appellee's brief, the estate argued that the plaintiff forfeited his second appellate contention because he didn't argue before the circuit court that he was unable to respond to the estate's motion to dismiss without taking additional depositions. Plaintiff does not respond to this argument in his reply brief or address his second appellate contention at all and thereby abandoned and conceded his second appellate contention and forfeited any argument he could have advanced in opposition to the estate's forfeiture argument. Authority for that proposition, your honor, is found in McKinney v. Hobart Brothers Company at 2018, Illap 4th, 170333, paragraph 47. Finding an issue raised by appellee conceded where appellant failed to respond in his reply brief. So I have some questions about this case, which I find kind of strange. My general impression is this, I want you to tell me where I'm wrong if I am, that Mr. Bader was a guy who loved his job, loved to work, loved to be around and doing things and was not happy when he wasn't able to do it. And despite his serious physical difficulties and seemed like the company both appreciated his dedication and interest and was worried about his condition and wanted him to be on Regarding the subject of safety concerns, the leave specialist saying that, correct me if I'm wrong, she instructed Bader that he could not work, that doing so would pose a safety risk. If that's the testimony here before the court, why doesn't that raise a genuine issue of material fact, whether because he loved what he was doing and wanted to be part of the action, he wasn't essentially just a volunteer on the Dayton question when this accident occurred, as opposed to being an employee. Why couldn't they try to conclude that he was an employee at all? Your Honor, I think the question is, first of all, on point with respect to Mr. Bader. By the way, I should point out, he wasn't acting as an employee. He may still have been technically an employee, but he wasn't supposed to be working that day or doing that. I apologize. So go ahead. And I think, Your Honor, hit the nail on the head with respect to Mr. Bader's character. We all have a grandpa or an uncle. Most of the time, they're farmers who have no idea how to not work. And that was Vern Bader. He had unfortunate health problems. He was put on short-term disability. But there's no way you could keep Vern Bader from working. And that's the rub, Your Honor. That's the reason why all these circumstances with respect to Helena don't change the fact that Vern Bader continued to work in his role at Helena, even though he was on short-term disability. That's undisputed. Well, wait a second. I just read you what he was told by the specialist from the firm. Don't work. Right. Don't do it. Yes, Your Honor. That's absolutely right. He was told that. And all these other concerns from internal communications and so forth, taking away his truck, the cell phone, Vern's a safety risk and whatnot. Why couldn't that lead someone to infer that he was just a volunteer? Not just a meddler, but he wanted to be there. He liked the action. Our alternative contention, Your Honor, is that if you find that it's fact-bound with respect to course of employment, then he was a volunteer. That's a second alternative argument upon which this court can affirm the circuit court. But back to the original question, all these circumstances that Vern shouldn't work, that he's a safety risk, that he even after the doctor said what the doctor said, even after the specialist said he was on. Well, just pausing right there, it seems to me on the date of this accident, he was continuing to perform his duties, perhaps, using that broadly by showing up at the office. But how does his showing up at the office mean go take the truck and help this guy out in the field? It sounds to me like, one, no one authorized it. No one requested it. And the only way to stop him would be to tackle him. What about that? Well, that might be right, Your Honor. But there's more to it than that. I could direct the court to the February 14, 2019, email from Helena Division Manager Brian Mattingly. It's clear from that email that Helena very much wanted Bader to continue working while on short-term disability. He wrote in that email, we're going to need Bader's advice going into the spring season, which will start as soon as the weather breaks. He carries a significant amount of our sales at the location. He also has a strong relationship with the community. Well, let me be more clear. By the way, these are not rhetorical questions, really trying to figure out what's going on. Even accepting everything you just said as being accurate, wouldn't that mean no more than you can show up at the office maybe and work the phone or visit with us there? How does the notion of what you just said possibly mean Bader was authorized or anyone authorized or expected him to get in a truck and do what he did? It's the estate's position that whether authorized or not, he continued to work and Helena acquiesced in him continuing to work. Well, how did they acquiesce? What did they do short of that? They let him do it. What? Your Honor, they let him do it. Well, they let him. What is it that they let him do? They let him come into the office, but that's not what's at issue here. What's at issue is getting into the truck and going out into the field. Isn't that what's at issue? That is what's at issue, Your Honor. What should they have done? By the way, I guess I'm not joking about having to tackle him. Is that what they were required to do to keep from getting into the truck? They couldn't let him continue to work. One way or another, they had to keep him from continuing to work. So you're saying that by letting him come into the office to work the phones or visit with the troops, that opens the door for his getting into the truck and going out into the field? Not necessarily by itself, Your Honor, but there's more to it. There's no evidence that contradicts Kathy Bader's deposition testimony that while Mr. Bader was on disability, he continued to do, quote, whatever it took. And during her testimony, she described all the things that Vern Bader did to keep the operation running. And that included things certainly that would encompass going out to the field to help remove a stuck spray rig. I can see where trier effect might ultimately conclude that, but the issue before us isn't what they might ultimately conclude. You're claiming there's no genuine issue of material fact, which means no reasonable person could possibly find otherwise. Isn't that what you're saying? That's right, Your Honor, based on the fact that he continued to work while he was on the short term disability. Go ahead. And the estate has never taken the position that just being an employee is sufficient. There's two issues before the court, whether there's genuine issues of material fact as to whether he's an employee and whether there's genuine issues of material fact as to whether he was acting in the course of his employment at the time of the accident. The estate's position is that the NOAC case closes the door on the first one. He's on short term disability. He continued to be an employee until the following February. The fact that he's on short term disability is just like the plaintiff in the NOAC case who was also on a short term disability, including TTD under Workers' Compensation Act. So he's clearly an employee. The course of employment question, I think we've we've went back and forth quite a bit with respect to that. And it's the estate's position that all three of the criteria for course of employment were satisfied based on some of the remarks that I made. But you want to take counsel counsel would take up then the first criteria for us. Please. Sure. That's just whether he was in a period of employment or not at the time of the accident. And that's that's the argument with respect to the NOAC case. He's I think there's more to that. It's the type of employment, the kind of employment that we would have expected the employee to be engaged in. Right. And that's the criteria whether it was within the period of employment and at a place where he may reasonably be in the performance of those duties. And again, the estate would cite Mrs. Bader's testimony that her husband continued to do everything that was required for purposes of his employment at Helena, even while he was on the short term disability. And there's no evidence to contradict that. In fact, what's your best argument in her from her affidavit that he did work again to going on the field and helping folks get unstuck and doing things of that nature. Well, it'd be in it'd be in her deposition testimony common law record 400 pages 483 to 484, where she talks about Mr. Bader doing whatever it took. What you can imagine. But counsel, excuse me, whatever it takes. I mean, when you're talking about someone in agriculture in the sales businesses, it relates to these types of businesses. I guess going back to a prior to the finding of disability, what suggests that he was out in the field, if you will, whether it's a sprayer, whether it's, you know, planting season. That's very different than the role of the salesman. I mean, it's one thing if they're doing, you know, seed presentations out in the field, maybe this is entirely entirely unrelated this is equipment based. So what is in the record to establish that other than this overall umbrella statement that he did whatever it took those pages of the record of her deposition. They go into it a little bit more than that. I don't have them handy but she's her general remarks are that he kept doing everything it took you know this was a business that was Mr. Bader's business, and later became Helena's and you know you can imagine the investment he had in his own business and the road including unstuck Helena sprayer in the field, and your honor other than the pages cited 443 to 484 in that vicinity that that would be the record sites that the estate would rely on. In answer to your question. Thank you. I want to, I want to. If I've answered the question, I would like to highlight, though the other two, the other two basis upon which this court can affirm, even assuming that the course of employment issue is is fact bound. Even if that's true this court can still affirm on two different bases. The first one is the fact that Mr Bader, at a minimum, even if he wasn't doing his normal duties at Helena, at a minimum was acting as a volunteer agent of Helena, and it's important to recognize that the plaintiff has failed to respond has also failed to respond to the estate's voluntary agent argument and its reply brief, and is thereby forfeited any argument he could have raised in opposition, putting the forfeiture aside section five a extends immunity not only the CO employees but also the agents of the employer. If the agent is subject to the employers right of control. It's undisputed that Jason Smith was the manager of the Helena branch, and was better supervisor. Accordingly, Smith had the authority and the ability to prevent better from voluntarily assisting with efforts to free the stuck spray rig. But there's no evidence in the record that he did anything to prevent better from helping. So there's two documents in the record containing accounts of this accident. The first is the accident summary, which is that common law record page 764. The second is Smith's account set forth in the July 10 2019 email, which is that common law record 767. So that's an email the day after the accident. The accident summary contains no indication that Smith ever told better not to bring equipment to the field, or that he told better to leave the field. Instead, the accident summary has Mr. Smith leaving the field to attend a birthday party, knowing that better was helping the plaintiff and the other Helena employees out in the field, free the stuck sprayer. The July 10 2019 email is a little different in that it has Mr. Smith leaving from the office and not from the bean field. In any event, based on this email plaintiff has continually represented and he did here today that Vern Bader was told by Jason Smith not to go out to the field where the sprayer was stuck. But a careful examination of that email reveals that that representation is entirely incorrect. The July 10 2019 email only provides that it was expressed, we've got this, and so Vern wasn't needed. But that's not evidence that Jason Smith expressed anything to Vern Bader. It's not evidence that Smith told better not to go out to the field and help with the stuck sprayer and it's not evidence that Smith told better to leave the field. So neither document the accident summary nor the July 10 2019 email has Smith telling better not to go out to the bean field, or telling him to leave the field, and neither plaintiff nor the other Helena employees told better not to help. Instead, they readily accepted his assistance in retrieving the equipment after the clevis broke, and so forth. Therefore, the evidence before the circuit court showed only that Bader's services, even if only volunteer in nature, were subject to Helena's right to control, and the estate is therefore immune from the common law negligence claim, pursuant to section five a of the Act. The second alternative ground upon which this court can affirm the circuit court is that plaintiff is a stopped from proceeding with his common law negligence claim, because he applied for and received workers compensation benefits before this before his common law negligence suit was filed. In Collier v. Wagner castings, our Supreme Court held that were an employee injured by a co-employee has collected compensation on the basis that his injuries were compensable under the Act. The injured employee cannot then allege that those injuries fall outside of the acts provisions. The appellate court and Ren v. Reddick Community Fire Protection District, and in other cases, has characterized this holding as section five A's own form of a stop on in November 2020 plaintiff filed an application for adjustment of claims seeking workers compensation benefits based on this accident, and he has conceded in his deposition that Helena's care carrier workers comp carrier paid his short term disability, and most of his medical bills. As a result plaintiff has elected his remedy, and is a stopped from receiving additional compensation for those same injuries through his common law court claim filed in 2021. In his reply brief plaintiff sites, Ren for the proposition that voluntary acceptance of workers compensation payments without an affirmative act to seek those benefits does not necessarily operate to bar the recovery of civil damages against the co plaintiff argues that the estate has failed to offer evidence to show that the short term disability and payment of his medical bills were made at his request rather than Helena's unilateral act to initiate such payments plaintiff is incorrect it's undisputed that he filed an application for adjustment of claim seeking workers comp benefits in 2020 before he filed the instant common law action in 2021, and it's undisputed that he accepted workers compensation benefits. Under those circumstances, the common law claim is barred because plaintiff's previous assertion that his injuries are covered by the act of stops him from later asserting that his injuries fall outside the acts provisions plaintiff received workers compensation benefits. After he filed his November 2020 application for adjustment of claim, seeking those benefits. During his September 8 2022 deposition. The plaintiff agreed that Helena's workers compensation carrier paid him for his time off from work, and most of his medical bills through the date of his deposition. And finally, plaintiff also testified that he had surgery his last surgery was in Springfield on July 7 2022 one year and eight months after he filed his claim for workers compensation benefits. That testimony is found at pages 424 through 427 of the common law record. I see my time has expired. Thank you, Your Honor, the state requests, respectfully that this court from the circuit court of Morgan County. Thank you counsel. Thank you. I'll start with police second point. Regarding a stop or that it's an incorrect assessment of the law. It's only when a co employees acting the course of his employment, that he is immune from suit for the negligent acts or intentional acts as under Collier and Carillo. So I would, I would ask that the court, not look at whether or not we need to change the immunity law here in this case, the facts are the issue presented on the new apply for coverage on the workman's compensation act before filing suit. No. Before you're used to drink wine just said he's wrong. Well, I think there's a little bit of confusion, Your Honor, because the complaint wasn't filed. I'm sorry the Mr shoemaker did not begin accepting more comp benefits and didn't file his claim for compensation until much later after the accident. Due to the nature of his injuries he was life flighted and hospitalized for I think something like, let me be more clear, did you apply for worker compensation benefits before filing suit in this case, I can be absolutely certain that we did before the active petition, or the active. Yes. Isn't he correct, the statute then bars you from proceeding with this litigation. No, Your Honor, he's not. That is our, that is our position that Carillo and Collier do not stand for that position. Say again I couldn't hear you. Is that what Carillo and Carillo and Collier, do not stand for that proposition they simply stand for the proposition that when a co employees acting the course and scope of their employment, they are immune from suit for their negligence. In an act incidental to employment section five a you could file for claim of the workers compensation. Until thereafter file suit against a alleged former employee or co employee for his for dark. Yes, Your Honor, it would be against it not a third party and that's our position here is that Mr Bader is a third party but it's under section five be of the act that allows us to do so. And in the Carillo case bears that out in head note, I believe, eight memory here. I'm sorry headnote for, I'm sorry, I know for the Carillo case bears that out that section five be allows seeking true tort fees are especially in the instance that it is a third party, such as this as we believe it is the July 10 email clearly states. That was, that was interesting to me that that was what the appellee had relied on, because it clearly states in quotations, Jason Smith expressed, we've got this. And Vern was not needed. I mean how much more clear can you get from the branch manager telling you not to go somewhere and then you go there outside the control. And with, with regards to the volunteer aspect, or the point of contention by the appellee for the volunteer aspect, they need to show that control, it clearly did not have control over that individual that day, and couldn't control him and then additionally that's a jury fact, a jury finding that needs to be for out in a jury trial. It raises a genuine issue of material fact. I'd also like to point out to the to your honors is that we don't know whose field this was for all we know this could have been Mr. The, the production of the documents from Helena did not indicate which field it was who on the field. And we don't know in the record did not bear out whose field it was or, or came from, or what they were doing there so we don't know it could have been Mr. Whereas he was just there as the owner of the field or the landlord of the field. These are just more issues of fact that need to be decided by a jury and are proper for dismissal under 2619 Kathy Bader's testimony that was brought to the attention of the court. In my opinion is vague, and it speaks mostly to his period of employment before February 9. And your honors had requested some information as to the job duties I would like to point out that ci 178 indicates the job duties of a sales manager with with Helena at the time. At the time of the, the incident at the time that Mr Bader was brought on. But our contention would be that all that changed. Anyways, after February of 2019 when he was put on complete and total medical disability and told not to operate a motor vehicle. And, and as that my time has expired. And we asked that the court reverse and remand this matter for further proceedings. Thank you counsel thank you both will take this matter and advisement and will now stand in recess.